UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

EDERICK FABRICIO,             :

           Plaintiff,      :

                :

v.                      :

                :

SUPT. T. GRIFFIN; DEP. SUPT. E. BURNETT;  :

DEP. SUPT. D. WILKINS; CAPT. CARRY; LT.  :

HANN; LT. MURPHY; SGT. SURBER; SGT.  :

RODRIGUEZ; SGT. MILLER; SGT.       :       **OPINION AND ORDER**

CONFORTI; C.O. V. CRUZ; C.O. O.      :

CHAVERS; C.O. J. ERNS; C.O. CHASE; C.O.  :     16 CV 8731 (VB)

VALLE; C.O. TAGLIAFERRY; C.O. COREY;  :

C.O. CARLSON; C.O. PHILLIPS; C.O.    :

BROKAW; C.O. LORDE-GRAY; C.O.     :

SULLIVAN; I.G. ORTIZ; I.G. JOHN DOE; I.G.  :

ISAAC; IGRC SUPERVISOR STANAWAY; DR.  :

BENTIVEGNA; and IMPOSTER INSPECTOR  :

GENERAL KEYSER,            :

           Defendants.    :

--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Ederick Fabricio, proceeding pro se and in forma pauperis, brings claims under

42 U.S.C. § 1983 against twenty-eight defendants: Superintendent ("Supt.") T. Griffin, Deputy

("Dep.") Supt. E. Burnett, Dep. Supt. D. Wilkins, Captain ("Capt.") Carry, Lieutenant ("Lt.")

Hann, Lt. Murphy, Sergeant ("Sgt.") Surber, Sgt. Rodriguez, Sgt. Miller, Sgt. Conforti,

Correction Officer ("C.O.") V. Cruz, C.O. Chavers, C.O. J. Erns, C.O. Chase, C.O. Valle, C.O.

Tagliaferry, C.O. Corey, C.O. Carlson, C.O. Phillips, C.O. Brokaw, C.O. Lorde-Gray, C.O.

Sullivan, Inspector General ("I.G.") Ortiz, I.G. John Doe, I.G. Isaac, Inmate Grievance

Resolution Committee ("IGRC") Supervisor Stanaway, Dr. Bentivegna, and "Imposter Inspector

General Keyser."[1]  Liberally construed, plaintiff's amended complaint asserts (i) Eighth Amendment claims for use of excessive force, failure to intervene, deliberate indifference to serious medical needs, and unconstitutional conditions of confinement; (ii) First Amendment claims for retaliation and denial of access to the courts; and (iii) Fourteenth Amendment claims for denial of due process and deprivation of property.

Now pending are defendants' partial motion to dismiss the amended complaint pursuant to Rule 12(b)(6) and motion to dismiss or for a more definite statement pursuant to Rules 8(a) and 12(e).  (Doc. #82).

For the reasons set forth below, the Rule 12(b)(6) partial motion to dismiss is GRANTED IN PART and DENIED IN PART.  The motion to dismiss or for a more definite statement under Rules 8(a) and 12(e) is DENIED.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.

Plaintiff's amended complaint is seventy-one pages long, and plaintiff attaches nearly 700 pages of exhibits, many of which are in Spanish.  Moreover, the amended complaint consists

---

[1]    Plaintiff sued C.O. Tagliaferry as "C.O. Tagliaffery"; Dep. Supt. E. Burnett as "Dep. SS. E. Burnett"; Dep. Supt. D. Wilkins as "Dep. SS. D. Wilkins"; and IGRC Supervisor Stanaway as "IGP Stanaway."  Moreover, the Attorney General's Office was unable to identify I.G. Ortiz, does not represent I.G. John Doe, and plaintiff disputes that defense counsel correctly identified "Imposter Inspector General Keyser."  As discussed below, the Court dismisses all claims against I.G. Ortiz, I.G. John Doe, and "Imposter Inspector General Keyser."  In addition, although the Attorney General's Office does not represent I.G. Ortiz, for ease of reference the Court refers generally to "defendants" throughout this Opinion and Order.

of numerous unconnected events and involves claims against twenty-eight defendants. The Court, having thoroughly reviewed these materials, briefly summarizes what seem to be plaintiff's primary claims: for excessive force, failure to intervene, and retaliation. The Court summarizes plaintiff's other allegations where relevant in the ensuing discussion section.

At all relevant times, plaintiff was an inmate at Green Haven Correctional Facility ("Green Haven").

I.      "Imposter Inspector General Keyser"

Plaintiff alleges at some point between May 12 and June 11, 2014, a person who identified himself as Inspector General Keyser interrogated plaintiff regarding whether correction officers were bringing drugs into Green Haven. This apparently occurred shortly after drugs were found in plaintiff's cell. Moreover, the Court infers from the amended complaint that plaintiff alleges the interrogation was in connection with an investigation into C.O. V. Cruz, for whom plaintiff had been a porter. According to the amended complaint, on August 22, 2014, C.O. V. Cruz was arrested and charged with criminal possession of marijuana and official misconduct, among other things.

Plaintiff believes the person who interrogated him was not an inspector general. Plaintiff calls this person "Imposter Inspector General Keyser." (See, e.g., Docs. ##15, 15-1, 15-2 ("Am. Compl.") ¶ 55). According to plaintiff, his interrogator did not show any identification, did not know about a disciplinary hearing involving plaintiff, and did not have a copy of a relevant misbehavior report; yet this interrogator knew such details as the number and milligrams of pills found in plaintiff's cell.

Plaintiff alleges he again encountered the so-called Inspector General Keyser on November 5, 2014, and accused him of framing plaintiff, seemingly in connection with the

discovery of drugs in plaintiff's cell. Plaintiff also alleges he observed the "Imposter Inspector General Keyser" interrogating another inmate on January 15, 2015.

Plaintiff alleges on January 30, 2015, he told defendant I.G. Isaac about "Imposter Inspector General Keyser." (Am. Compl. ¶ 173). Plaintiff also alleges he complained about the imposter inspector general to several Green Haven staff and correction officers, including Supt. T. Griffin, in person, at disciplinary hearings, by filing grievances, and by sending letters to the staff.

Plaintiff alleges defendants retaliated against him for these complaints. Among other things, plaintiff alleges defendants filed false misbehavior reports, provided false testimony at disciplinary hearings, and assaulted him on February 10, 2015.

II.     Alleged February 10, 2015, Assault

Plaintiff alleges on February 10, 2015, he was talking with another inmate while waiting for an escort to retrieve him from his cell to get his pain medication. C.O. Chase, after speaking with other unnamed officers, told plaintiff to put his hands on the wall to be searched. Plaintiff did as he was told. According to plaintiff, "C.O. Chase lift the Plaintiff from between his legs and slam the Plaintiff on the floor." (Am. Compl. ¶ 195). C.O. Chase then covered plaintiff's face with his body while unspecified defendants hit plaintiff with sticks, kicked him, and punched him. Plaintiff alleges C.O. Erns then put something in plaintiff's hand, "took it out of his hand real quick," and started screaming that plaintiff had a weapon in his hand. (Id. ¶ 197). Defendants then handcuffed plaintiff and pushed him against a wall, and C.O. Carlson started to slam plaintiff's face against the wall, kneed plaintiff in his knee, thigh, and right ribs, and told plaintiff to "shut the fuck up." (Id. ¶ 199). Plaintiff states he recognized C.O. Chase, C.O. Erns,

C.O. Carlson, C.O. Corey, C.O. Phillips, C.O. Brokaw, C.O. Lorde-Gray, and Sgt. Miller, but there were additional officers as well.

Plaintiff also alleges that while C.O. Corey was escorting plaintiff to the Special Housing Unit ("SHU"), he slammed plaintiff against the "East side control office" and the gate next to the control office.  (Am. Compl. ¶ 202).

Plaintiff alleges that despite the injuries he sustained as a result of the February 10, 2015, assault, and the fact that he defecated on himself, he was not taken to the medical clinic.  A nurse allegedly took some information, told plaintiff to write a brief statement, gave plaintiff some bacitracin, and left.[2]

## DISCUSSION

I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

---

[2]    Defendants are not moving to dismiss plaintiff's excessive force claims against C.O. Chase, C.O. Erns, C.O. Carlson, C.O. Corey, C.O. Phillips, C.O. Brokaw, and C.O. Lorde-Gray. In addition, it is unclear whether plaintiff alleges Sgt. Miller to have participated in the alleged assault or was merely present and failed to intervene.  Therefore, the Court construes plaintiff's amended complaint to assert an excessive force claim against Sgt. Miller in the alternative to plaintiff's failure to intervene claim, for the reasons stated in the ensuing section.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

## II. Eighth Amendment Claims

Liberally construed, plaintiff's amended complaint asserts three categories of Eighth Amendment claims, in addition to the excessive force claims not challenged in the instant motion: (i) failure to intervene to prevent the February 10, 2015, assault, against twenty-two defendants; (ii) deliberate indifference to serious medical needs against Dr. Bentivegna; and (iii) unconstitutional conditions of confinement against unnamed correction officers and C.O. Sullivan.

Except for plaintiff's failure to intervene claims against Sgt. Miller, C.O. Phillips, C.O. Brokaw, and C.O. Lorde-Gray, and his excessive force claims not challenged in this motion, plaintiff's Eighth Amendment claims fail.

A.      Failure to Intervene

Plaintiff states failure to intervene claims against Sgt. Miller, C.O. Phillips, C.O. Brokaw, and C.O. Lorde-Gray, in the alternative to his excessive force claims against them.  However, plaintiff fails to state failure to intervene claims against the other eighteen defendants:  Sgt. Surber, Lt. Hann, Lt. Murphy, Capt. Carry, Dep. Supt. D. Wilkins, Supt. T. Griffin, IGRC Supervisor Stanaway, I.G. Ortiz, I.G. Isaac, I.G. John Doe, "Impostor Inspector General Keyser," Dep. Supt. E. Burnett, Sgt. Rodriguez, Sgt. Conforti, C.O. V. Cruz, C.O. O. Chavers, C.O. Valle, and C.O. Tagliaferry.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted). "Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." Jean-Laurent v. Wilkerson, 461 F. App'x 18, 21 (2d Cir. 2012) (summary order) (citing Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001)).[3] "However, 'in order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.'" Id. (alterations omitted) (citing Anderson v. Branen, 17 F.3d at 557).  Claims for excessive force and failure to intervene to prevent the use of

_____

[3]      Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

excessive force may proceed simultaneously in the alternative.  See Cumberbatch v. Port Auth. of N.Y. and N.J., 2006 WL 3543670, at *11 (S.D.N.Y. Dec. 5, 2006).

Plaintiff pleads sufficient facts to state failure to intervene claims against Sgt. Miller, C.O. Phillips, C.O. Brokaw, and C.O. Lorde-Gray, in the alternative to his excessive force claims against them.  Plaintiff alleges he saw these defendants while other correction officers assaulted him on February 10, 2015.  It is unclear from plaintiff's amended complaint whether plaintiff alleges they participated in the alleged assault or failed to intervene to prevent other correction officers' use of excessive force.  However, it is clear plaintiff alleges they were present when he was assaulted.  Combined with plaintiff's specific allegations regarding the nature of the assault, plaintiff's allegations of these officers' immediate presence are sufficient to state an alternative failure to intervene claim.[4]

On the other hand, plaintiff has not alleged any facts suggesting the other eighteen defendants observed or were present for the February 10, 2015, assault, knew or had reason to know plaintiff would be assaulted, or had an opportunity to intervene to prevent harm to plaintiff.  Therefore, plaintiff fails to state failure to intervene claims against the remaining eighteen defendants.

Defendants Sgt. Miller, C.O. Phillips, C.O. Brokaw, and C.O. Lorde-Gray assert they are entitled to qualified immunity on plaintiff's failure to intervene claims.

The Court disagrees.

---

[4]     As for C.O. Chase, C.O. Erns, C.O. Carlson, and C.O. Corey, plaintiff makes specific factual allegations that they assaulted him.  Therefore, the Court construes plaintiff's amended complaint only to assert excessive force claims—not failure to intervene claims—against those defendants.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal citations omitted). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established;' and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).

Here, plaintiff sufficiently has alleged defendants violated his Eighth Amendment rights, which were clearly established at the time, and it was not objectively reasonable for defendants to believe they could lawfully violate those rights. Accordingly, dismissing plaintiff's failure to intervene claims at this stage of the case based on qualified immunity is inappropriate. However, this is an issue that may be reviewed at summary judgment after the completion of discovery.

Accordingly, plaintiff's failure to intervene claims against Sgt. Miller, C.O. Phillips, C.O. Brokaw, and C.O. Lorde-Gray may proceed. Plaintiff's failure to intervene claims are dismissed as to the remaining eighteen defendants.

B.    Deliberate Indifference to Serious Medical Needs

Plaintiff fails to state claims against Dr. Bentivegna for deliberate indifference to serious medical needs.

A claim for deliberate indifference brought by a convicted prisoner is analyzed under the Eighth Amendment.  See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).  To state an Eighth Amendment claim for deliberate indifference, a plaintiff's allegations must satisfy an objective prong and a mens rea prong.  Thus, to assert a claim for deliberate indifference to medical needs under the Eighth Amendment, plaintiff must plead facts alleging (i) a "sufficiently serious" deprivation of medical care, and (ii) the officials in question acted with a "sufficiently culpable state of mind."  Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts.  "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required.  Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 845–47 (1970)).  "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  Id. at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

The mens rea component requires a showing that defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm.  Salahuddin v. Goord, 467 F.3d at 280.  "[T]he charged official must act with a sufficiently culpable state of mind."  Id. (citing Wilson v. Seiter, 501 U.S. 294, 300 (1991)).  "To satisfy this prong of the deliberate indifference test, a plaintiff must allege only that the defendant was 'aware of facts' from which one could infer that 'a substantial risk of serious harm' existed, and

that the defendant actually drew that inference." Dotson v. Fischer, 613 F. App'x 35, 38–39 (2d Cir. 2015) (summary order) (citing Farmer v. Brennan, 511 U.S. at 837). However, it is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Moreover, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Here, plaintiff brings deliberate indifference claims to his serious medical needs based on two incidents. First, plaintiff alleges on March 6, 2015, he asked defendant Dr. Bentivegna why he had stopped giving plaintiff pain medication. Dr. Bentivegna responded that the medication was not working for plaintiff, which plaintiff contends was a lie. Second, plaintiff alleges at some point in early 2015 after the alleged February 10, 2015, assault, plaintiff asked for x-rays on his back and knees and did not receive them.

Plaintiff's allegations do not satisfy the objective component because plaintiff fails to allege what harm he suffered, if any, from the failure to receive pain medication or x-rays. Indeed, plaintiff's claim regarding his pain medication constitutes a mere disagreement over the type of treatment he received. Plaintiff also does not allege that Dr. Bentivegna acted with sufficient mens rea regarding either incident. Plaintiff fails to allege that Dr. Bentivegna was aware of and inferred a substantial risk of harm from rescinding plaintiff's pain medication prescription or denying plaintiff the opportunity to receive x-rays.

Accordingly, plaintiff's deliberate indifference to serious medical needs claims against Dr. Bentivegna are dismissed.

C.    Conditions of Confinement

Plaintiff also fails to state unconstitutional conditions of confinement claims against unnamed correction officers or C.O. Sullivan.

To satisfy the objective requirement of a deliberate indifference claim based on unconstitutional conditions of confinement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (internal citations omitted)).  Plaintiff must allege prison officials deprived him "of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." Id. (internal citations omitted).

With respect to the mens rea requirement:

[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  This "deliberate indifference" element is equivalent to the familiar standard of "recklessness" as used in criminal law.

Phelps v. Kapnolas, 308 F.3d 180, 185–86 (2d Cir. 2002) (internal citation omitted).

Plaintiff alleges two incidents that relate to potential claims for unconstitutional conditions of confinement.  First, plaintiff alleges between late April and May 2014, he was given a new job, and for one night was required to stay in a room with no toilet, no sink, a stretcher for sleeping, and an ice machine making loud noises.  Plaintiff calls it a "cage" that he had to stay in overnight.  (Am. Compl. ¶ 36).  Second, plaintiff alleges on March 7, 2015, C.O. Sullivan opened all of the windows, presumably in plaintiff's cell, "knowing that it was freezing outside." (Id. ¶ 213).

Plaintiff's allegations fail to satisfy either the objective or mens rea prong, as plaintiff does not allege an unreasonable risk of serious damage to his health, or that any prison official, including C.O. Sullivan, was aware of a risk of serious harm to plaintiff.

Accordingly, plaintiff's conditions of confinement claims against C.O. Sullivan and unnamed correction officers are dismissed.

III.    First Amendment Claims

A.    Retaliation

Plaintiff asserts First Amendment retaliation claims against all defendants. Plaintiff's allegations are insufficient to state a claim.

To adequately plead a First Amendment retaliation claim, plaintiff must allege (i) he engaged in constitutionally protected speech or conduct; (ii) a defendant took adverse action against him; and (iii) the protected speech and adverse action are causally connected. Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015). Courts approach prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Id. at 295 (quoting Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003)). Accordingly, a prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. Id.

Regarding the first element, "[i]t is well-established that 'retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances' and is therefore actionable under Section 1983." Edwards v. Horn, 2012 WL 760172, at *14

(S.D.N.Y. Mar. 8, 2012) (citing Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996)) (adopting report and recommendation).

To satisfy the second element, an inmate must allege "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Edwards v. Horn, 2012 WL 760172, at *14 (quoting Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004)). An inmate may allege either a serious injury or "that he has been chilled from engaging in the First Amendment activities that triggered the retaliation." Id. (quoting Smith v. Maypes–Rhynders, 2009 WL 874439, at *4 (S.D.N.Y. Mar. 31, 2009)). "Although filing a false misbehavior report is not itself a constitutional violation, it may constitute an adverse action for purposes of a retaliation claim." Mateo v. Bristow, 2013 WL 3863865, at *5 (S.D.N.Y. July 16, 2013) (internal citations omitted).

As for the third element, plaintiff's allegations "must support an inference that the protected conduct was "a substantial or motivating factor for the adverse actions taken by prison officials." Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order) (internal citation omitted). "Courts may infer a retaliatory motive from a variety of factors, including the timing of the report, and the report's falsity." Mateo v. Bristow, 2013 WL 3863865, at *6 (internal citations omitted).

Plaintiff's retaliation claims fail because plaintiff does not allege sufficient facts to suggest a causal connection. Except for the timing of the alleged retaliatory acts, plaintiff's allegations are entirely conclusory: plaintiff merely alleges he repeatedly told defendants he believed he was being retaliated against. (See, e.g., Am. Compl. ¶ 173 (alleging plaintiff told I.G. Isaac "about the Defendant Imposter Inspector General Keyser and what was happening with him at the facility"), ¶ 182 (alleging plaintiff said at a hearing that he was being retaliated

against "because he recognice [sic] that between May 12 – June 11, 2014 that administration used a employee of that facility to play the role of a Inspector General to interrogate him while he was in S.H.U.")). However, plaintiff's alleged statements to defendants are themselves mere conclusory allegations. Plaintiff cannot circumvent the requirement for "specific and detailed" factual allegations by recounting previously-made conclusory allegations. Dolan v. Connolly, 794 F.3d at 295.

Further, plaintiff does not allege any reason why defendants would retaliate against him for asserting there was a person posing as an inspector general. Cf. Dorsey v. Fisher, 468 F. App'x at 27 (affirming dismissal of retaliation claim when plaintiff did not provide "any plausible reason why [defendant] would file an allegedly false misbehavior report other than that [plaintiff] filed a grievance against" another officer). Nor does plaintiff allege any "corroborating statements from other officers or inmates" that would support an inference that defendants retaliated against him. Edwards v. Horn, 2012 WL 760172, at *18.

Plaintiff also claims defendants retaliated against him to prevent him from being a witness in the investigation of C.O. V. Cruz, for whom he had been a porter. Plaintiff's only nonconclusory allegation to support this claim is that C.O. Valle called him snitch and other names. But C.O. Valle's name-calling does not constitute an adverse action. See Edwards v. Horn, 2012 WL 760172, at *15 ("While some verbal threats, even if not serious enough to implicate the Eighth Amendment, can constitute an adverse action, non-specific verbal threats, harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim.") (internal quotation and alterations omitted).

Moreover, plaintiff alleges only that C.O. Valle and defendants attempted to "prevent" plaintiff from testifying. (See, e.g., Am. Compl. ¶ 262). However, allegations of preventative

action are not actionable as a First Amendment retaliation claim.  See Davis v. Jackson, 2016 WL 5720811, at *9 (S.D.N.Y. Sept. 30, 2016) ("[T]here is no First Amendment cause of action for anticipatory retaliation.") (citing Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009)).

Accordingly, plaintiff fails to state First Amendment retaliation claims against any defendant.

B.      Denial of Access to the Courts

To the extent plaintiff asserts a claim against IGRC Supervisor Stanaway for failure to file grievances, the Court construes this as a denial of access to the courts claim, which the Court dismisses.

To state a claim for denial of access to the courts, "a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim."  Davis v. Goord, 320 F.3d at 351 (alterations in original) (internal quotation omitted). Notwithstanding the First Amendment's guarantee of the right to petition the government for redress, "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under [Section] 1983."  Cancel v. Goord, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).

Plaintiff fails to allege he was hindered in his effort to pursue a legal claim.  Accordingly, plaintiff's First Amendment claim against IGRC Supervisor Stanaway for denial of access to the courts is dismissed.

IV.    Due Process

A.      Disciplinary Hearings and Misbehavior Reports

Plaintiff also fails to state claims for violation of due process against Dep. Supt. D. Wilkins, Lt. Hann., Lt. Murphy, or Supt. T. Griffin.

Procedural due process requires "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)). Thus, to sustain a Section 1983 claim based on an alleged violation of due process, a plaintiff must allege (i) he possesses a liberty or property interest protected by the Constitution or federal statutes, and (ii) he was deprived of that liberty or property interest without due process. Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

As to the first element, "[a] prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation and alteration omitted). Although there is no bright-line rule for establishing when keep lock confinement rises to the level of a constitutional violation, courts consider both the duration and the conditions of confinement. See id. In assessing duration, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009).

Regarding the second element, when an inmate's liberty interest is implicated, "[b]ecause prison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply." Williams v. Menifee, 331 F. App'x 59, 60 (2d Cir. 2009) (summary order) (internal quotation and alteration omitted). The procedural due process afforded to a prisoner charged with a violation in a disciplinary proceeding consists of: "advance written notice of the charges against him; a hearing affording

him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (internal citations omitted). The hearing disposition must be supported by "some evidence in the record." Colon v. Annucci, 344 F. Supp. 3d 612, 636 (S.D.N.Y. 2018) (quoting Sira v. Morton, 380 F.3d at 75).

Further, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Id. (citing Franco v. Kelly, 854 F.2d 584, 588–90 (2d Cir. 1988)). "This principle extends as well to false testimony by corrections personnel at prison disciplinary hearings." Thomas v. Calero, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) (adopting report and recommendation).

Plaintiff alleges he was involved in five improper disciplinary hearings: on (i) January 15, 2015, before Lt. Hann; (ii) January 17, 2015, before Lt. Murphy; (iii) January 25, 2015, before Lt. Hann; (iv) February 4, 2015, before Lt. Murphy; and (v) April 17, 2015, before Dep. Supt. D. Wilkins. Plaintiff alleges Lt. Hann, Lt. Murphy, and Dep. Supt. D. Wilkins were biased, allowed the introduction of false statements at all of the hearings, and found plaintiff guilty because of their institutional and departmental loyalty. In addition, plaintiff alleges Lt. Hann and Dep. Supt. D. Wilkins refused to allow plaintiff to call witnesses at the January 25, 2015, and April 17, 2015, hearings.

Plaintiff's claims based on alleged due process violations at his January 15, 17, and 25, and February 4, 2015, hearings fail because plaintiff alleges he was sentenced to only thirty days

keep lock at each hearing, and plaintiff does not allege that his conditions in the SHU following the hearings were more onerous than usual. See, e.g., Colon v. Annucci, 344 F. Supp. 3d at 633–34 (collecting cases).

Plaintiff also fails to state a claim for due process violations at his April 17, 2015, hearing. Plaintiff makes only conclusory allegations that Dep. Supt. D. Wilkins was biased and refused to call witnesses. Further, plaintiff attached to his amended complaint a hearing record sheet that shows: (i) plaintiff received advanced notice of the charges against him; (ii) plaintiff was permitted to call seven witnesses; (iii) the hearing disposition was supported by at least some evidence in the record, as the hearing officer relied upon, among other things, the testimony of "[n]umerous" staff and inmate witnesses, whom plaintiff was allowed to question; and (iv) plaintiff received a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. (Doc. #15-13 at 2–4).[5] Moreover, plaintiff fails to suggest he was not provided a reasonable opportunity to call witnesses, because plaintiff "alleges no facts suggesting that the excluded witnesses would have provided additional or unique testimony that would not have been redundant and instead would have bolstered his defense." Colon v. Annucci, 344 F. Supp. 3d at 636.

In addition, plaintiff's allegations that he was falsely accused in misbehavior reports and in testimony at disciplinary hearings are insufficient to support a due process claim, as a prison inmate has no general right to be free from being falsely accused in misbehavior reports or at disciplinary hearings. See Thomas v. Calero, 824 F. Supp. 2d at 499. And to the extent plaintiff

---

[5] "Doc. #__ at __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

alleges the false testimony and misbehavior reports were in retaliation for protected speech or conduct, those claims fail for the reasons discussed above.

Accordingly, plaintiff fails to state due process claims.

B.      Deprivation of Property

Plaintiff alleges several incidents which, liberally construed, indicate plaintiff intends to assert claims based on the deprivation of his property:

- On a morning between May 12 and June 11, 2014, plaintiff told Sgt. Rodriguez that Sgt. Rodriguez's officers had stolen some packs of cigarettes from plaintiff's cell.

- In October 2014, a sergeant took plaintiff's belt.

- On November 9, 2014, plaintiff's brother visited, and told plaintiff that he had left him two bags of candy in the package room. Plaintiff went to pick up his packages, but the correction officer said there was only one bag for plaintiff, and said that was all they had. Eight days later, on November 17, 2014, plaintiff went to pick up the bag of candy, but the correction officer told him he could not have it. Plaintiff asked the correction officer to call the package room sergeant. Plaintiff was taken to his cell and put on keep lock.

- On December 1, 2014, C.O. Valle took plaintiff's radio.

- On January 18, 2015, C.O. Erns searched plaintiff's property and "took a lot of clothes" from plaintiff. (Am. Compl. ¶ 162).

- On February 5, 2015, a correction officer took two personal sheets from plaintiff.

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Here, such a remedy was available to plaintiff in the form of an action in the New York State Court of Claims, but apparently was not pursued. See Davis v. New York, 311 F. App'x 397, 400 (2d Cir. 2009) (summary order) (Court of Claims action is adequate postdeprivation remedy, precludes prisoner's due process claim for lost personal property).

Accordingly, plaintiff's due process claims for alleged deprivation of property are dismissed.

V.    Superintendent T. Griffin

Plaintiff's claims against Supt. Griffin are dismissed for lack of personal involvement.

To state a Section 1983 claim, plaintiff must allege defendants' personal involvement in an alleged deprivation of plaintiff's constitutional rights.  See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013).  In other words, plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.

A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises someone who violated the plaintiff's rights.  Ashcroft v. Iqbal, 556 U.S. at 676.  However, a supervisor's personal involvement may be established by showing:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation omitted).  "[A]n alleged constitutional violation complained of in a grievance must be ongoing in order to find personal involvement, such that the supervisory official who reviews the grievance can remedy it directly."  Allah v. Annucci, 2018 WL 4571679, at *7 (S.D.N.Y. Sept. 24, 2018) (internal quotation omitted) (collecting cases).

Here, the only claims remaining in this case are plaintiff's excessive force and failure to intervene claims arising from the alleged February 10, 2015, assault. Plaintiff fails to allege those claims involved ongoing violations when he complained to Supt. T. Griffin.

Accordingly, plaintiff's claims against Supt. T. Griffin are dismissed.[6]

VI.    <u>Motion to Strike</u>

Defendants' motion to dismiss or for a more definite statement under Rules 8(a) and 12(e) is denied.

"[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." <u>Harnage v. Lightner</u>, 2019 WL 637975, at *2 (2d Cir. Feb. 15, 2019) (per curiam) (internal quotation omitted). Rule 8(a)(2) states a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To satisfy this standard, the complaint must at a minimum disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." <u>Harnage v. Lightner</u>, 2019 WL 637975, at *2 (internal quotation omitted).

"When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, or to dismiss the complaint." <u>Harnage v. Lightner</u>, 2019 WL 637975, at *2 (internal quotation omitted). But "dismissal is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." <u>Id</u>. (internal quotation and alteration omitted).

---

[6]    To the extent plaintiff asserts claims against Capt. Carry because he received plaintiff's grievances, those claims are dismissed for the same reason.

Nevertheless, courts have dismissed pleadings in similar or less egregious circumstances to those in this case.  See Grimes v. Fremont General Corp., 933 F. Supp. 2d 585, 595 (S.D.N.Y. Mar. 22, 2013) (internal quotation omitted) (collecting cases).

Although the amended complaint is, as noted above, difficult to decipher, the Court concludes it is sufficient to permit defendants to have a fair understanding of what plaintiff is complaining about and whether there are legal bases for recovery, as the foregoing analysis demonstrates.  Plaintiff "identifies discrete defendants and the actions taken by these defendants" that purportedly violated his rights.  Harnage v. Lightner, 2019 WL 637975, at *2.  Further, requiring plaintiff at this stage of the litigation to amend his complaint for a second time to provide a more definite statement would only further delay resolution of this two-year-old case, and thus would not serve the "just, speedy, and inexpensive determination" of this action.  Fed. R. Civ. P. 1.

Accordingly, the Court will not dismiss or strike plaintiff's amended complaint under Rules 8(a) or 12(e), or require plaintiff to file a more definite statement.

**CONCLUSION**

The partial motion to dismiss the amended complaint is GRANTED IN PART and DENIED IN PART. The motion to dismiss or for a more definite statement is DENIED.

The sole remaining claims in this case are: (i) excessive force against Sgt. Miller, C.O. Chase, C.O. Erns, C.O. Carlson, C.O. Corey, C.O. Phillips C.O. Brokaw, and C.O. Lorde-Gray; and (ii) failure to intervene against Sgt. Miller, C.O. Phillips, C.O. Brokaw, and C.O. Lorde-Gray.

Defendants shall file an answer by March 20, 2019.

The Clerk is instructed to (i) terminate defendants Supt. T. Griffin, Dep. Supt. E. Burnett, Dep. Supt. D. Wilkins, Capt. Carry, Lt. Hann, Lt. Murphy, Sgt. Surber, Sgt. Rodriguez, Sgt. Conforti, C.O. V. Cruz, C.O. Chavers, C.O. Valle, C.O. Tagliaferry, C.O. Sullivan, I.G. Ortiz, I.G. John Doe, I.G. Isaac, IGRC Supervisor Stanaway, Dr. Bentivegna, and Imposter Inspector General Keyser from the docket, and (ii) terminate the motion. (Doc. #82).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: March 6, 2019
      White Plains, NY

          SO ORDERED:

          _____
          Vincent L. Briccetti
          United States District Judge